# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-1279-STA-egb |
| | ) | |
| THE PROCTOR AND GAMBLE | ) | |
| MANUFACTURING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER GRANTING DEFENDANT SUMMARY JUDGMENT ON PLAINTIFF'S MIXED MOTIVE CLAIM

Before the Court are the parties' supplemental briefs on Plaintiff Charles Reed's claim for race discrimination under a mixed motive theory. On February 27, 2013, the Court granted Defendant Proctor and Gamble Manufacturing Company summary judgment (D.E. # 73) on all of Plaintiff's claims of discrimination except his claim for failure to promote under a mixed motive analysis. The Court found that supplemental briefing from the parties on this remaining claim would assist the Court in deciding the issue on its merits. Specifically, the Court ordered the parties "to prepare supplemental briefing on Plaintiff's mixed motive failure to promote theory to include citations to appropriate case law, application of that authority to the facts in the record at summary judgment, and the possible remedies to which Plaintiff would be entitled, if the matter went to a jury and the jury returned a verdict in favor of Plaintiff."[1]

---

[1] Order Granting in Part Def.'s Mot. for Summ. J. 42, Feb. 27, 2013 (D.E. # 73).

1

On March 20, 2013, Defendant submitted its supplemental brief (D.E. # 74), arguing that just as with his other claims of discrimination, Plaintiff could not make out his claim under a mixed motive theory. On April 10, 2013, Plaintiff filed his supplemental brief (D.E. # 75), contending that triable issues on his mixed motive theory remain. For the reasons set forth below, the Court grants Defendant summary judgment on Plaintiff's claim.

## BACKGROUND

The Court has set out the full factual and procedural background of this employment discrimination case in previous orders. Plaintiff alleged that Defendant discriminated against him on the basis of his race by failing to provide training, failing to promote him to a higher pay grade, retaliating against him, and creating a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 and the Tennessee Human Rights Act ("THRA"). The only claim still before the Court is Plaintiff's allegation that Defendant discriminated against him by failing to promote him to T4 status.

In its supplemental brief on this issue, Defendant argues that Plaintiff has no evidence from which a reasonable juror could find that his race was a motivating factor in Defendant's decision not to promote Plaintiff. Plaintiff has cited no evidence that the decision-maker in his case, Jeffrey Bruns, harbored any racial animus towards Plaintiff or any other African-American. Plaintiff has alleged that other individuals such as Stuart Massey exhibited racial bias.[2] Yet Plaintiff has not

---

[2] As an aside Defendant takes issue with the Court's previous ruling that the alleged noose incident might constitute admissible, circumstantial evidence of bias. Defendant argues that the statement of Kim Newman to Stuart Massey, "Are you about to hang someone?," is inadmissible hearsay and not a present sense impression. Defendant contends that in order to constitute a present sense impression for purposes of Federal Rule of Evidence 803(1), Newman's statement must actually describe or explain what she saw. Defendant suggests that Newman's statement was ambiguous and not descriptive of what she saw behind Plaintiff's back.

come forward with admissible evidence to show how this racial animus was a motivating factor in his failure to receive a promotion.  According to Defendant, Plaintiff has no evidence that "the decision makers applied different standards for Caucasians to achieve T4 status or that his alleged comparator was not qualified for T4 status."[3]  Absent such proof, Plaintiff has failed to establish that his race motivated in any way Defendant's failure to promote him.  Therefore, Defendant argues that it is entitled to summary judgment on this final claim.[4]

Plaintiff has filed a supplemental brief in response on the mixed motive issue.  Plaintiff argues that under applicable Sixth Circuit authority, his burden of production to survive summary judgment is not onerous.  Plaintiff asserts that a "jury could believe that race was a motivating factor of P&G in failing to promote [him] to the T4 position."[5]  Plaintiff argues that he can prove that Defendant treated him differently than other non-protected employees and that this evidence presents a jury question on his mixed motive claim.  Plaintiff specifically contends that he was treated less favorably than Katrece Brown, a white female whom Defendant promoted to T4 but who had

---

For these reasons Defendant asserts that Newman's statement is inadmissible hearsay.

The Court notes Defendant's objection on this issue.  However, Plaintiff has not cited the noose incident in his supplemental brief addressing his mixed motive claim.  Because Plaintiff has not raised this evidence as to the only issue remaining before the Court, the Court finds that it need not consider Defendant's additional argument about the admissibility of Newman's statement.

[3] Def.'s Suppl. Br. 10 (D.E. # 74).

[4] Defendant has followed the Court's previous instructions and briefed the possible remedies Plaintiff might recover if he prevailed on his mixed motive claim.  Because the Court holds that Defendant is entitled to judgment as a matter of law on this claim, the Court need not address the possible remedies.

[5] Pl.'s Suppl. Br. 3 (D.E. # 75).

"essentially the same qualifications" as Plaintiff.[6]  Plaintiff further argues that an issue of fact remains about Defendant's intent to promote Brown over Plaintiff.  Plaintiff cites all of the following facts in support of his mixed motive claim:

(1) Plaintiff's previous department manager Bob Alvey concluded that Plaintiff met over 75% of the requirements for T4, which was enough to trigger a gap assessment;

(2) co-workers Stella Collier and Delois Kinnie believe that Plaintiff possessed all of the qualification for T4, and Collier testified that other non-protected employees received mock gap meetings, which Defendant denied Plaintiff;

(3) Plaintiff's plant requirement sheet "differs very little from Katrece Brown," negating Defendant's claim that Brown was qualified and Plaintiff was not;

(4) Plaintiff possessed other academic and work-related qualities that others lacked;

(5) Plaintiff's time log shows that he was on leave at the time Bruns claimed he met with Plaintiff and Stuart Massey about Plaintiff's promotions process;

(6) Plaintiff's "coach's summary, developed by Massey, shows that there were only a couple of issues" with Reed's T4 promotion;[7]

(7) Massey wanted Plaintiff to demonstrate leadership in the Fat and Moisture System even though Plaintiff was already the leader in the system;

(8) Bruns and Massey gave Brown support for her promotions process but denied Plaintiff a pre-gap assessment until November 2008.

---

[6] Pl.'s Suppl. Br. 3.

[7] Plaintiff adds without any explanation that his "T4 Plant requirement at 8, 9, 12, 13, 16 and 17 demonstrated the leadership" and that "the process sensors had actually been installed for some time."  Pl.'s Suppl. Br. 5.

Plaintiff argues that based on this record, summary judgment on his mixed claim is not proper.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[8] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party,[9] and the "judge may not make credibility determinations or weigh the evidence."[10] When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[11] It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[12] These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[13] In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [her] asserted causes of action."[14]

---

[8] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Canderm Pharmacal, Ltd. v. Elder Pharms, Inc.*, 862 F.2d 597, 601 (6th Cir. 1988).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994).

[11] *Celotex*, 477 U.S. at 324.

[12] *Matsushita*, 475 U.S. at 586.

[13] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[14] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[15]  Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[16]

<u>**ANALYSIS**</u>

The Court holds that Defendant is entitled to summary judgment on Plaintiff's failure to promote claim under a mixed motive theory.  As the Court explained in its initial summary judgment order, "[a]llegations of discriminatory conduct . . . fall into one of two categories: single-motive claims, where an illegitimate reason motivated an employment decision, or mixed-motive claims, where both legitimate and illegitimate reasons motivated the employer's decision."[17]  In order to survive summary judgment on a discrimination claim under a mixed-motive analysis, Plaintiff must "produce evidence sufficient to convince a jury that: (1) the defendant took an adverse employment action against the plaintiff; and (2) race, color, religion, sex, or national origin was *a* motivating factor for the defendant's adverse employment action."[18]  Plaintiff may prevail on his mixed-motive claim merely by proving by a preponderance of the evidence that Defendant's consideration of his race "was *a* motivating factor for any employment practice, *even though other factors also motivated*

---

[15] *Anderson*, 477 at 251-52.

[16] *Celotex*, 477 U.S. at 322.

[17] *Spees v. James Marine, Inc.*, 617 F.3d 380, 389-90 (6th Cir. 2010) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 396 (6th Cir. 2008) (internal quotation marks omitted)).

[18] *Griffin v. Finkbeiner*, 689 F.3d 584, 595 (6th Cir. 2012) (quoting *White v. Baxter Healthcare*, 533 F.3d at 400) (emphasis in original).

*the practice*."[19]  Plaintiff's burden "is not onerous and should preclude sending the case to the jury only where the record is devoid of evidence that could reasonably be construed to support the plaintiff's claim."[20]  "The ultimate question in a mixed-motive analysis is simply whether there are any genuine issues of material fact concerning the defendant's motivation for its adverse employment decision, and, if none are present, whether the law . . . supports a judgment in favor of the moving party on the basis of the undisputed facts."[21]

The Court begins by restating its previous holding that Plaintiff has not made out a claim for failure to train under a mixed motive theory.  Defendant's delay in providing Plaintiff coaching or a pre-gap assessment for promotion to T4 did not constitute an adverse employment action.  As the Court stated in its initial summary judgment order, "even if Plaintiff should have received a pre-gap meeting sooner, he has not proven that the delay adversely affected his employment status or his ability to advance to the higher pay grade."[22]  There was no dispute that when Plaintiff finally had a pre-gap assessment in November 2008, he had not completed all of his T4 requirements.  Under the circumstances, the Court concluded that Plaintiff could not show that the delay in receiving the meeting actually deprived him of a promotion or a pay increase.  Therefore, Defendant was entitled to summary judgment on Plaintiff's separate claim for failure to train under a mixed motive theory.

Based on the supplemental briefs filed by the parties, the Court further holds that Plaintiff

---

[19] *White v. Baxter Healthcare*, 533 F.3d at 401 (quoting 42 U.S.C. § 2000e-2(m) (emphasis in original)).

[20] *Id.* at 400 (citation omitted).

[21] *Spees*, 617 F.3d at 390 (quotation and internal quotation marks omitted).

[22] Order Granting in Part Def.'s Mot. for Summ. J. 32.

has failed to establish the elements of his claim for failure to promote under a mixed motive theory. It is well-established that a failure to promote can be an adverse employment action for purposes of Title VII.[23] The Sixth Circuit has never addressed whether a plaintiff alleging the denial of a promotion under a mixed motive theory must also show that he possessed the qualifications for the promotion.[24] The Court of Appeals has simply held that a plaintiff in a mixed motive case need not "eliminate or rebut all the possible legitimate motivations" of the employer.[25] In this case it is undisputed that Plaintiff did not possess all of the qualifications for the T4 promotion. The question of Plaintiff's qualifications arguably goes to whether Defendant treated any similarly situated employee more favorably than Plaintiff. Under the circumstances, the Court need not resolve the issue in its analysis of this first element.

Assuming that Plaintiff could make out the first element of his *prima facie* case, the Court holds that Plaintiff has not adduced evidence that his race was a motivating factor in Defendant's decision not to promote him. Plaintiff has not cited any evidence in support of his mixed motive claim that would "unambiguously relate to race . . . in the context of employment."[26] In his

---

[23] *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 303 (6th Cir. 2012).

[24] *Cf. Makky v. Chertoff*, 541 F.3d 205, 215 (3d Cir. 2008) (holding that a plaintiff alleging a mixed-motive theory of discrimination based on a failure to promote must show that he was qualified for the position).

[25] *White v. Baxter Healthcare*, 533 F.3d at 401 ("In order to reach a jury, the plaintiff is not required to eliminate or rebut all the possible legitimate motivations of the defendant as long as the plaintiff can demonstrate that an illegitimate discriminatory animus factored into the defendant's decision to take the adverse employment action.").

[26] *Griffin*, 689 F.3d at 595-96 (holding that "particularly striking evidence of [the decision-maker's] bias against black workers" generally coupled with evidence of pretext was enough for mixed motive claim to survive summary judgment). There is no evidence that the relevant decision-maker in this case, Jeffrey Bruns, harbored racial bias or that Bruns considered

supplemental brief, Plaintiff relies on much of the same disparate treatment evidence that supported his failure to train claim. For example, Plaintiff argues that he can prove that Defendant treated Katrece Brown more favorably by providing her with a mock gap meeting and/or pre-gap assessment in support of her bid to move up to T4 status. Plaintiff also continues to argue that his T4 qualifications were substantially similar to Brown's T4 qualifications. According to Plaintiff, he met over 75% of the requirements for T4, had largely the same plant requirements as Brown,[27] and held a degree in biology, which Brown lacked. Plaintiff argues that this evidence of disparate treatment is enough to meet his low burden to survive summary judgment.

The Court disagrees. Even though Plaintiff's burden is not onerous, the Court holds that none of the evidence cited establishes that race was a motivating factor in Defendant's decision not to promote Plaintiff.[28] The Sixth Circuit has held that for purposes of a mixed motive claim,

---

Plaintiff's race as a motivating factor in his decision to deny Plaintiff the promotion to T4.

Furthermore, Plaintiff has not relied in any way on the alleged noose incident involving Stuart Massey to support his claim for failure to promote under a mixed motive theory. As a result, the Court does not consider that evidence here and need not decide whether it could support Plaintiff's claim under a mixed motive analysis.

[27] Plaintiff contends then that this fact "negates Defendant's claim that Brown was qualified and Reed was not for the position of T4." Pl.'s Suppl. Br. 4. The Court finds this naked assertion unconvincing for a number of reasons. First, Plaintiff has not cited any evidence about Brown's plant requirements in support of his claim. Second, Plaintiff has already admitted in his previous summary judgment briefing that Brown was qualified for the promotion and that he was not. Pl.'s Resp. to Def.'s Statement of Fact ¶ 35. Finally, even if Plaintiff and Brown possessed many of the same plant requirements, the fact remains that Brown possessed all of the qualifications for the T4 promotion and that Plaintiff did not. Therefore, this evidence does not support Plaintiff's claim for failure to promote.

[28] *Tibbs v. Calvary United Methodist Church*, No. 11-5238, 2012 WL 5861725, at *7 (6th Cir. Nov. 20, 2012) (holding that the plaintiff had failed to make out mixed motive claim on the basis of disparate treatment evidence); *Copeland v. Regent Elec., Inc.*, No. 11-3478, 2012 WL 3871883, at *10-11 (6th Cir. Sept. 6, 2012) (holding that disparate treatment evidence was not

disparate treatment of similarly situated non-protected employees may show that a plaintiff's protected characteristic was a motivating factor in an employment decision.[29]  In the case at bar, however, Plaintiff has not shown that he was similarly situated to Brown in relevant respects.  The undisputed facts show that Plaintiff never possessed all of the qualifications for T4 status and that Brown did.  Plaintiff admitted as much in his previous summary judgment briefing.[30]  Viewing the evidence in the light most favorable to him, Plaintiff can show at best that he met approximately 75% of the T4 requirements.[31]  While Plaintiff claims that this was enough to qualify him for a gap assessment, Plaintiff has not shown how his qualifications entitled him to the promotion.  Even when Plaintiff finally received a gap assessment, it is undisputed that he did not possess any of the T4 qualifications reviewed during the meeting.[32]  Based on this record, Plaintiff cannot show that he was qualified for the promotion.

In his supplemental brief, Plaintiff seems to argue that Defendant may have understated his actual T4 qualifications.  Proof of Defendant giving inconsistent explanations for its decision not to

---

probative of racial bias because "any irregularities in the layoff order adversely affected Caucasians and [the plaintiff] alike, foreclosing a reasonable inference of racial motive"); *Laney v. Ohio Dept. of Youth Servs.*, 448 F. App'x 553, 555-56 (6th Cir. 2011); *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 486 (6th Cir. 2011); *Graham v. Best Buy Stores, L.P.*, 298 F. App'x 487, 495 (6th Cir. 2009); *Lindsey v. Whirpool Corp.*, 295 F. App'x 758, 768 (6th Cir. 2008); *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 713 (6th Cir. 2007); *Alcala v. Whirlpool Corp.*, 675 F. Supp. 2d 765, 770 (N.D. Ohio 2009).

[29] *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 652 (6th Cir. 2012) ("The different treatment of [the plaintiff], as compared to that of the four retained male Supervisors, provides an inference of discrimination at the summary judgment stage.").

[30] Pl.'s Resp. to Def.'s Statement of Fact ¶ 35 (D.E. # 70).

[31] *Id.*

[32] *Id.* ¶ 37.

promote Plaintiff[53] or holding Plaintiff to a higher standard to evaluate his qualifications for T4[34] is arguably relevant evidence of disparate treatment. Plaintiff asserts that a "coach's summary" (D.E. # 75-3) completed by Massey and dated March 2006 shows "that there were only a couple of issues with Reed's T4 promotion" and identified "two things Massey said Plaintiff needed to work on before the gap meeting."[35] Plaintiff has attached the document to his brief. Plaintiff asserts without any explanation that another document identified as "T4 requirements" (D.E. # 75-4) "demonstrated the leadership."[36] Apparently Plaintiff relies on the "T4 requirements" document to rebut concerns management expressed about Plaintiff's leadership qualifications for the T4 promotion. Plaintiff adds that the second issue identified in the coach's summary and on which Plaintiff needed to work was the installation of the process sensors. According to Plaintiff, the installation was completed, though Plaintiff has not cited any evidence for this assertion.

Because the documents Plaintiff describes as the "coach's summary" and "T4 requirements"

---

[33] *Griffin* , 689 F.3d at 596 ("[The plaintiff] presented evidence of pretext by showing that the City gave inconsistent reasons for his termination and that the proffered reason of budgetary constraints may have lacked a factual basis.").

[34] *Spees v. James Marine, Inc.*, 617 F.3d 380, 394 (6th Cir. 2010) (holding that the plaintiff could establish that her pregnancy was a factor in her job transfer based on her employer's failure to "undertak[e] an objective evaluation to determine whether Spees could perform her welding job while pregnant, [and] instead subjectively view[ing] Spees's pregnancy as rendering her unable to weld"); *White v. Baxter Healthcare*, 533 F.3d at 406 (holding that a jury could reasonably conclude that the plaintiff's race was a motivating factor in his negative performance evaluation where the plaintiff's manager exhibited general racial animus and failed to evaluate the plaintiff under the correct standard).

[35] Pl.'s Suppl. Br. 5.

[36] *Id.* Plaintiff adds without any explanation that his "T4 Plant requirement at 8, 9, 12, 13, 16 and 17 demonstrated the leadership." *Id.*

are unauthenticated, the Court declines to consider them here.[37]  Even if the Court did take up the

exhibits, Plaintiff has failed to show how this evidence proves that he was qualified for the T4

promotion.  As Plaintiff concedes, "leadership" was simply an area identified in Massey's 2006

coaching summary where Plaintiff needed additional work before his gap assessment.[38]  The issue

here is not whether Plaintiff was entitled to a gap assessment but whether Plaintiff possessed the

qualifications for promotion to T4.  Plaintiff has not made that showing.

Not only is it undisputed that Plaintiff lacked all of the T4 qualifications, it is also undisputed

that his comparator Katrece Brown possessed all of the qualifications for the T4 promotion.  Plaintiff

simply maintains that he had many of the same plant requirements as Brown and that his plant

requirement sheet "differs very little from" Brown's.  Plaintiff further claims that he had other

desirable attributes that Brown lacked such as a college degree.  Other than his own educational

attainment, Plaintiff has failed to undertake a specific comparison of his T4 qualifications and

Brown's T4 qualifications from which a reasonable juror could find that the two were similarly

situated.[39]  In fact, Plaintiff has provided no evidence of Brown's T4 qualifications at all.  Without

---

[37] *Sfakianos v. Shelby Cnty. Gov't*, 481, F. App'x 244, 245 (6th Cir. 2012); *Alexander v. CareSource*, 576 F.3d 551, 561 (6th Cir. 2009).  Furthermore, the "T4 requirements" document is undated and nowhere bears Plaintiff's name.  As such, the document on its face is not relevant to the mixed motive issue presented.

[38] The same is true of Plaintiff's claim that "Massey wanted Reed to be the leader in the Fat and Moisture System, but the fact is that Reed was the leader in this system."  Pl.'s Suppl. Br. 5. While this proof may go to whether Plaintiff was entitled to a gap assessment, Plaintiff has not demonstrated how the evidence proves his qualifications for the promotion.

[39] *Wilson v. Ford Motor Co.*, No. 12-3110, 2013 WL 439868, at *4 (6th Cir. Feb. 6, 2013) (holding that in order to analyze whether a plaintiff and a comparator are similarly situated, "a court must conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented") (quoting *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 243 (6th Cir. 2005)).  The Sixth Circuit has never explained

such proof comparing his qualifications for the T4 promotion with Brown's qualifications for the T4 promotion, Plaintiff has failed to show that Brown was similarly situated to Plaintiff but received more favorable treatment.[40]  Therefore, summary judgment is proper on this issue.

The other evidence cited by Plaintiff in his supplemental brief likewise fails to support his failure to promote claim.  Plaintiff has produced a time sheet, showing that he was on leave on days in April and May 2008 during the period of time when Bruns supposedly met with him about his promotions process.[41]  Just as with the "coaching summary" and the "T4 requirements" document, the time sheet is not authenticated and therefore is not admissible for purposes of summary judgment.[42]  Furthermore, the Court has already noted that a factual dispute exists about whether Bruns ever had such a meeting with Plaintiff.[43]  The evidence of the time sheet simply buttresses Plaintiff's claim that the meeting did not occur.  Because the Court has already assumed for purposes of summary judgment that the meeting did not occur, the new evidence would not affect the Court's

---

whether this comparison should focus on objective qualifications or subjective qualifications in a mixed motive case.  *See White v. Columbus Metro. Hous. Auth.*, 429 F.3d at 242 n.6.  In the absence of any specific record evidence about Brown's qualifications, the Court need not reach the issue.

[40] *Dixon v. Univ. of Toledo*, 702 F.3d 269, 279 (6th Cir. 2012) (holding that "in order to determine whether [the comparator] and [the plaintiff] are similarly situated," the court needed "at the very least" evidence about the comparator and that "[w]ithout such evidence, we cannot engage in an accurate comparison of the two individuals for the purposes of summary judgment in this case"); *Weatherby v. Fed. Exp.*, 454 F. App'x 480, 488 (6th Cir. 2012) (holding that summary judgment on a mixed motive claim was proper in part because the plaintiff had not shown disparate treatment of comparators).

[41] Time Log (D.E. # 75-2).

[42] *Alexander*, 576 F.3d at 561.

[43] Order Granting in Part Def.'s Mot. for Summ. J. 13.

conclusions of law. Even if the Court accepted this evidence as proof that Bruns did not meet with Plaintiff about his promotions process or a gap meeting before November 2008, Plaintiff has not shown how this fact is relevant to his claim for failure to promote.

Plaintiff also cites evidence from co-workers that they believed Plaintiff possessed all of the qualifications to advance to T4. The Court held in its initial summary judgment order that this evidence did not suffice to prove discriminatory motive, explaining that "the declarations contain no facts to support the bald assertion about Plaintiff's qualifications."[44] Even if the Court considered the testimony of Plaintiffs' co-workers here, Plaintiff fails to show how this evidence would support his argument that Defendant treated Brown more favorably. The declarations did not address Brown's qualifications for the T4 promotion. As such, the declarations do not show that Plaintiff was similarly situated to Brown.

For all of these reasons, the Court concludes that Plaintiff cannot show that his race was a motivating factor in Defendant's decision not to promote Plaintiff to T4. Therefore, Defendant is entitled to summary judgment on this claim.

## CONCLUSION

Having considered all of Plaintiff's claims and concluded that Defendant is entitled to judgment as a matter of law on all claims, this case is hereby **DISMISSED**.

---

[44] *Id.* at 33 & n.85 ("However, the declarations contain no facts to support the bald assertion about Plaintiff's qualifications, and even if they did, the evidence would otherwise fail to establish that Defendant had a discriminatory motive.").

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 10, 2013.